Argued 26 October, decided 28 November, 1904.

**HIBBARD *v.* STEIN.**

[78 Pac. 665.]

AGENCY — SALE OF SAMPLES BY TRAVELING SALESMAN.

1. A traveling salesman has no implied authority from the nature of his employment to sell the samples intrusted to him by his employer.

CONSTRUCTION OF CONTRACT WITH TRAVELING SALESMAN AS TO DISPOSITION OF SAMPLES — TITLE OF PURCHASER.

2. A contract employing a traveling salesman provided that the salesman should return all the samples to his employer, or sell them under the instructions of the house, and account for the same in cash or an itemized statement, naming the firm they are to be charged to, and required the salesman to pay cash for all samples unaccounted for at the end of the year or at the termination of the contract. The contract also had attached a schedule, which provided that samples were charged as cash, and must be paid for by salesmen, unless returned or their sale properly accounted for. *Held,* that such contract did not authorize the salesman to sell his samples except in pursuance of express instructions from his employer, and that a sale made without such instructions conferred no title on the purchaser.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Statement by MR. JUSTICE WOLVERTON.

This is an action by Hibbard, Spencer, Bartlett & Co. against Phillip Stein to recover possession of certain personal property intrusted to one Joe Diener as samples for use while engaged as a traveling salesman for the plaintiff. Diener sold the goods to defendant, and plaintiff claims that he did so without its authority; hence no title passed by the transaction, and that plaintiff is still the owner and entitled to the possession. Plaintiff being successful in the trial court, defendant appeals.          AFFIRMED.

For appellant there was a brief over the name of *Bernstein & Cohen,* with an oral argument by *Mr. Alexander Bernstein.*

For respondent there was a brief and an oral argument by *Mr. Henry E. McGinn.*

MR. JUSTICE WOLVERTON delivered the opinion.

But a single question is presented for our determination, which is whether Diener was authorized by the plaintiff,

under his contract of employment, to sell the samples, and this depends for its solution upon a proper interpretation of the contract. The trial court was of the opinion that the contract did not confer the requisite authority. It permitted evidence to go to the jury, pro and con, touching the alleged existence of a general custom among dealers and their salesmen, whereby the right of salesmen to dispose of their samples at will is recognized, and upon which an implied authority was predicated, and instructed them as to that, but charged them, upon a construction of the contract, that Diener was not by its terms and conditions authorized or empowered to make the sale. If the court was right in this latter particular, the judgment should be sustained; otherwise, not.

1. A traveling salesman, known in modern business parlance as a "drummer," derives no implied authority from the nature of his employment to sell the samples with which his principal intrusts him as an aid to the discharge of the duties he engages to perform. Being essential and necessary to the performance of the salesman's undertaking, no reasonable inference can arise that he is to dispose of them, for, if he does, he is left without available means for exhibiting the goods of his employer. Nor is the principle that the agent is entitled to employ all necessary and usual means of executing the authority imposed adequate to the purpose: Reinhard, Agency, § 463; Mechem, Agency, § 343; *Savage* v. *Pelton*, 1 Colo. App. 148 (27 Pac. 948); *Kohn* v. *Washer*, 64 Tex. 131 (53 Am. Rep. 745).

2. The contract has appended a schedule, which is denominated "Suggestions and Instructions to Salesmen," and it is essential that the two instruments be read as one, in order to determine the intendment of the parties. Defendant's counsel rely upon the following paragraphs as

having conferred upon Diener ample authority to sell the goods in question to defendant.

This in the contract proper:

"It is distinctly understood and agreed by the party of the second part, that in accepting and receipting for samples, he shall return all of same to the party of the first part, or sell them under the instructions of and according to the established rules of this house and account for the same in cash or an itemized statement, naming the firm they are to be charged to; and the party of the second part agrees to pay cash for all samples unaccounted for at the end of the year, or at the termination of this contract."

This in the schedule:

"4th. Samples are charged as cash and must be paid for by salesmen, unless returned or their sale properly accounted for. Samples sold must be entered on yellow sample department sheets and marked delivered. Otherwise you will not receive proper credit. Never leave samples of any kind about depots, hotels, or with irresponsible parties. Have them with you or in responsible hands, properly checked."

Three other paragraphs in the schedule are referred to as essential to an intelligent interpretation of the above. They are the following:

"14th. Sell no goods for future delivery unless under instruction from the house.

"16th. If there are any of these instructions that you do not fully understand, get explanation before leaving the house.

"17th. We have made these suggestions and given these instructions to salesmen so they may fully understand our wishes regarding the manner of doing our business upon the road."

It is conceded that Diener received no instructions from the house relative to the samples, or the sale or disposal thereof, except such as were contained in the schedule.

The clause of the contract providing that Diener shall return all samples, or sell them under instructions of and according to the established rules of the house, and account for the same in cash or an itemized statement, naming the firm they are to be charged to, recites an agreement exclusively on the part of the agent. It contains no agreement or direction on the part of the house. The fourth clause of the schedule, reciting that "samples are charged as cash, and must be paid for by salesmen, unless returned, or their sale properly accounted for," is a rule of the house, to which the agent has agreed, and by which he must abide when he takes out samples, and embodies neither a direction nor an instruction. By reference back to the contract it will be seen that the agent agrees to pay cash for all samples unaccounted for at the end of the year or the termination of his contract, so that the contract conforms to the rule, and there is no ambiguity in this particular. The clause following in the schedule, namely, "Samples sold must be entered on yellow department sheets and marked delivered. Otherwise you will not receive proper credit"— embodies both an instruction and a rule. What follow are instructions, but they have no especial bearing as matter important for interpretation. We look in vain for an instruction or direction under any conditions to sell these samples.* The circumstance of charging the samples to the agent as cash does not obligate him to pay for them, unless he fails to return them or account for their sale ; much less does it authorize him to sell them. This analysis indicates to our minds the true intendment of the contract. The agent agrees to one of two things — either to return the samples, or to sell them under instructions and according to the rules of the house ; not that, in the latter alternative, he has instructions to

---

*NOTE.— See note in 18 L. R. A. 663-667, Extent of the Authority Conferred upon Travelling Salesmen.        REPORTER.

sell embodied in the schedule, or that any rule of the house permits him to do so, but that he shall sell when so instructed, which must come as an independent direction from the house should it at any time or for any reason desire the agent to dispose of them; and that, when a sale is made in pursuance of such instruction, then the agent shall account in cash or by an itemized statement, according to the nature of the sale.

It is argued that the fourteenth paragraph of the schedule, namely, "sell no goods for future delivery unless under instructions from the house," is a positive direction, unambiguous in any particular, and that, if the parties meant that samples should not be sold except under specific instructions, then they would have said so in as direct language; hence we are to infer that instructions for the sale of samples were intended. But this does not follow. The language of the paragraph referred to is, it must be conceded, more direct than that setting forth Diener's agreement to sell under the instructions; yet it appears to us that its purpose is not more clear. The plain meaning of the agreement that he shall sell under instructions is that he shall sell only when he has them, and, none being found in the schedule, it must be concluded that he sold without the intended or requisite authority, as measured by the terms of the contract. Clauses 16 and 17 cast no light that aids us in construing the contract. They are simply designed as admonitions to the salesman to obtain a full understanding of the instructions before entering upon the discharge of his duties and obligations, so that the interests of the house may be better subserved in accordance with its manner and ideas of transacting business.

This disposes of the case. Diener being without authority or power under the contract to dispose of these samples, defendant obtained no title by his purchase from

him without instructions from the house to sell them. The judgment of the trial court will therefore be affirmed, and it is so ordered. AFFIRMED.